UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH III,

        Plaintiff,

v.                                    Case No. 10-cv-13898
                                         HON. MARK A. GOLDSMITH

LYNN M. DAVIDSON, ET AL.,

        Defendants.
_____/

## OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, IN PART, AND DISMISSING CLAIMS AGAINST DEFENDANTS ELWOOD L. BROWN, MARILYN DUNN, KIMBERLY BENNETT, AND SAMANTHA LORD, AND GRANTING PLAINTIFF'S MOTION FOR SERVICE OF COMPLAINT BY UNITED STATES MARSHAL (DKT.8)

This matter is before the Court on Plaintiff Sam Smith's objections (Dkt. 10) to the Report and Recommendation ("R&R"), entered by Magistrate Judge R. Steven Whalen on July 7, 2011 (Dkt. 9), in which the Magistrate Judge recommended that the Court sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(1). For the reasons that follow, the Court accepts and adopts the R&R, in part, and dismisses the claims against Defendants Elwood L. Brown, Marilyn Dunn, Kimberly Bennett, and Samantha Lord. The Court will allow the claims against the remaining Defendants to proceed at this time.

**I. Background**

Plaintiff Sam Smith III filed this pro se civil rights action claiming that the "intentional and grossly negligent acts and omissions of state officials . . . prevented Plaintiff from asserting his parental rights." Compl. ¶ 14 (Dkt. 1). Plaintiff alleges that in early 2007, he and his then-fiancée, Christa Lyn Brinkmeier, conceived a child, who was born on October 6, 2007 and

1

named Blake Anthony Brinkmeier. In the Spring of 2007, both Plaintiff and Ms. Brinkmeier were arrested, and Plaintiff was returned to prison as a parole violator. In September 2007, Ms. Brinkmeier was released from jail, while Plaintiff remained incarcerated. Plaintiff alleges that "[u]pon her release, Ms. Brinkmeier cut all ties to Plaintiff." Id. ¶ 19.

While in prison, Plaintiff sought information as to the whereabouts of Ms. Brinkmeier and their child. He subsequently learned that the Michigan Department of Human Services ("DHS") had instituted an abuse-and-neglect petition in the St. Clair County Circuit Court. Plaintiff alleges that, despite inquiries to the judge and to other Defendants through letters declaring his wish to assert parental rights, he was not given notice of the parental termination proceedings, was not permitted to participate, and was given erroneous information that impeded his ability to intervene in the state-court proceedings.

Defendant Judge Elwood L. Brown is the judge on the St. Clair County Circuit Court who presided over the child-protective proceeding. Defendants Marilyn Dunn and Kimberly Bennett are the court's clerk and deputy clerk, respectively. Defendant Lynn Davidson is the Macomb County Friend of the Court; Defendant Edward Messing is a staff attorney with the St. Clair County Friend of the Court; and Defendant Michael Wendling is the St. Clair County Prosecutor. Defendant Misty Wojnarowicz is a DHS employee who initiated the abuse-and-neglect petition in the St. Clair County Circuit Court. Defendant Samantha Lord was the child's court-appointed attorney in the neglect proceeding. Defendant Deborah Ellis is an employee of the Michigan Office of Child Support. Defendant Janice Williams is the legal affairs liaison for DHS.

Plaintiff alleges the following series of events: On November 8, 2007, unbeknownst to Plaintiff at the time, a child-protective proceeding was initiated by Defendant Wojnarowicz on

behalf of DHS before Defendant Judge Brown. Id. ¶ 24. On March 16, 2008, Plaintiff wrote to the Macomb County Friend of the Court, seeking information about his child. Defendant Davidson responded in a March 24, 2008 letter, stating that the "Macomb County Friend of the Court does not have your case at this time. However a support referral on behalf of your child has been initiated by the Michigan Office of Child Support. I am forwarding your correspondence to the attention of Support Specialist Deborah Ellis." Id. ¶¶ 27-28. Plaintiff alleges he never received any communication from Defendant Ellis. Id. ¶ 31.

On April 8, 2008 Plaintiff wrote to the St. Clair Circuit Court asking for assistance in locating his child, establishing paternity and custody, and in paying child support. Defendant Messing responded April 24, 2008 with a child support services application form. Plaintiff returned the form, explaining that it was incomplete because he lacked necessary information regarding the child; nevertheless, on May 19, 2008, his application was denied as incomplete. Id. ¶¶ 33-36.

On June 11, 2008, Plaintiff wrote to Central Paternity Registry of the Michigan Department of Community Health, requesting a copy of the child's birth certificate. Defendant Williams responded in a September 7, 2008 letter stating that Plaintiff's parental rights had been terminated July 16, 2008; in fact, alleges Plaintiff, the matter was still pending and Plaintiff's parental rights had not been terminated at the time. Id. ¶¶ 37-40.

On September 25, 2008, Judge Brown entered the termination order, terminating Plaintiff's parental rights. Id. ¶ 41.

On October 19, 2008, Plaintiff wrote to St. Clair Circuit Court clerk requesting all court records relating to Christa Brinkmeier. Defendant Bennett, in a October 23, 2008 letter, reported that no records of Christa Brinkmeier had been found. Id. ¶¶ 42-43.

Plaintiff alleges that on October 27, 2008 he wrote two additional letters to the court seeking information about his son's case but received no response. Id. ¶ 44. In November 2008, Plaintiff wrote to Defendants Brown, Lord, and Wojarowicz asking for help in asserting parental rights, none of whom responded. Id. ¶¶ 47-48. On January 5, 2009, Plaintiff alleges he wrote another letter to Lord, who responded that she received his first letter on November 7, 2008 but that his appeal period had expired in October 2008. Id. ¶¶ 49-52.

On May 5, 2009, Plaintiff filed a petition in the St. Clair Circuit Court to establish paternity, which was returned, unfiled, by Defendant Dunn, with a letter stating that Judge Brown had instructed her not to file the pleadings. Id. ¶¶ 54-56.

The complaint makes no specific allegations against Wendling, but Plaintiff sets forth in his Objections to the R&R the allegation that Wendling had been "notified of Plaintiff's efforts to find his child and assert his parental rights but made no effort to notify Plaintiff of the then-pending child-protective proceeding or to notify the court of Plaintiff's efforts to assert his parental rights." Obj. at 3.

Plaintiff's claim against Judge Brown is that he "committed the non-judicial act of instructing his clerk to return Plaintiff's complaint to establish paternity without filing it." Obj. at 1. Plaintiff's claim against Dunn is based on her refusal to file Plaintiff's complaint at the direction of the judge, and because she later denied knowledge of such complaint. Id. at 4. With respect to the other Defendants, Plaintiff claims that that by failing to inform him that a child-protective proceeding had been instituted regarding his son, and by failing to inform the court that he was attempting to assert his parental rights, Defendants violated his constitutional and common law rights. Plaintiff asserts a number of claims, including interference with his First Amendment right to a family relationship; violation of due process; gross negligence; fraud/

4

misrepresentation; and intentional infliction of emotional distress ("IIED"). In his objections, Plaintiff states that while he "did not explicitly include an access-to-courts claim in his complaint . . . he believes he has stated such a claim against all Defendants." Obj. at 8.

## II. Discussion

### a. Absolute Immunity

The Magistrate Judge recommended that the following Defendants be dismissed under the doctrine of judicial or quasi-judicial immunity: Elwood L. Brown, Lynn Davidson, Michael Wendling, Edward Messing, Kimberly Bennett, Misty Wojnarowicz, and Marilyn Dunn. R&R at 4. The Court agrees as to Defendants Brown and Dunn, but concludes that it is not appropriate to dismiss the claims against the others on this ground without the benefit of full briefing from the parties.

With respect to Defendant Brown, judges enjoy absolute immunity from personal liability for "acts committed within their judicial jurisdiction," Pierson v. Ray, 386 U.S. 547, 553-54 (1967). This absolute immunity of a judge applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985). The Magistrate Judge concluded that Plaintiff alleged no facts that Defendant Brown's actions were outside the scope of his judicial functions. R&R at 4. In his objections, Plaintiff argues that Defendant Brown was acting outside his judicial functions by "commit[ing] the non-judicial act of instructing his clerk to return Plaintiff's complaint to establish paternity without filing it." Obj. at 1. The Court disagrees with Plaintiff's characterization of this action as "non-judicial." Instructing the clerk of the court with regard to filing or not filing documents submitted in the case before the court is unquestionably judicial conduct. See Jones v. Mossing, No. 84-1778, 1986 WL 16812, at *1 (6th Cir. Apr. 25, 1986)

5

(judge and clerk absolutely immune for refusing to file and acknowledge receipt of complaints). It was also within the scope of judicial conduct to refuse to respond to a letter Plaintiff allegedly sent to the court inquiring about his son. Accordingly, Defendant Brown is protected by absolute immunity, and the claims against him will be dismissed.

The Magistrate Judge also found that Defendants Davidson, Wendling, Messing, Bennett, Wojnarowicz and Dunn are protected from suit by the doctrine of quasi-judicial immunity. "[N]onjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity from damage claims arising from their performance of the delegated functions." Moses v. Parwatikar, 813 F.2d 891, 892 (8th Cir. 1987). The Magistrate Judge found that Defendants "were performing public judicial functions and are entitled to the protection of quasi-judicial immunity." R&R at 5 (citations omitted).

The Court agrees with the Magistrate Judge with respect to Defendant Dunn only. The claim against Dunn is that she refused to file Plaintiff's complaint at the direction of the judge. Like the doctrine of absolute immunity, which protects judicial officers, the doctrine of quasi-judicial immunity protects judicial support staff for actions taken at the direction of judicial officers in support of their judicial acts. Jones, 1986 WL 16812, at *1. Dunn's act in refusing to file the complaint was done at the direction of Judge Brown, for which Dunn is protected by quasi-judicial immunity. Accordingly, the Court dismisses the claims against Dunn.

With respect to the other Defendants, however, the Court cannot say at this point that their actions are protected by quasi-judicial immunity. Defendants are absolutely immune from suit on claims arising out of their performance of judicial or quasi-judicial functions, but not from suits that arise out of other conduct. Holloway v. Brush, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). Plaintiff's claims relate to allegations that (i) Defendants failed to provide him with

6

notice of the court proceedings and/or misled him about the proceedings, and (ii) Defendants failed to notify the court that Plaintiff was seeking to assert parental rights. The R&R does not cite to any authority finding such particular claims to give rise to quasi-judicial immunity for persons holding the same offices as held by Defendants. In the absence of such specific authority and in the absence of full briefing by all parties, it would be premature for the Court to conclude – for the purpose of screening the complaint under § 1915 – whether Defendants' conduct is quasi-judicial, on the one hand, or merely administrative, on the other. Accordingly, the Court will not dismiss the claims against these Defendants on the basis of quasi-judicial immunity at this time.

### b. Failure to State a Claim

The Magistrate Judge recommended dismissing Plaintiff's claims against the remaining Defendants whom he concluded did not enjoy absolute or quasi-judicial immunity – Defendants Ellis, Lord, and Williams – for failure to state a claim upon which relief can be granted. As to Ellis and Lord, the R&R concluded that they had no legal duty to Plaintiff; also, as to Lord, the R&R concluded that she was not a "state actor," and that the fraud claim and IIED claims were not sufficiently pled. As to Williams, the R&R concluded that the claims against were not plausible, and that the fraud and IIED claims were insufficiently pled.

The Court agrees that the claims against Lord should be dismissed. As the child's attorney, she is clearly not a "state actor" subject to §1983 liability. See Polk County v. Dodson, 454 U.S. 312, 324-325 (1981) (public defender not subject to §1983 liability as a state actor). Nor would she have any duty to Plaintiff, given that the attorney's duty is strictly to her client. Id. at 319, n.8 ("[T]he primary office performed by appointed counsel parallels the office of privately retained counsel . . . . [H]is duty is not to the public at large, except in that general way.

7

His principal responsibility is to serve the undivided interests of his client.") (quoting Ferri v. Ackerman, 444 U.S. 193, 204 (1979)). Because she is not a "state actor" and had no legal duty to Plaintiff, the federal claims as well as the gross negligence claim must be dismissed.

As for the fraud claim against Lord, the Court agrees that it fails to state a claim. Under Michigan law, the elements of a claim for fraud are that: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reasonable reliance upon it; and (6) the plaintiff suffered damage. Cummins v. Robinson Twp., 770 N.W.2d 421, 435 (Mich. Ct. App. 2009). The fraud theory against Lord is that she misrepresented the appeal period applicable to the termination order. In fact, she correctly described the 21-day period for an appeal as of right from the September 25, 2008 order. See Mich. Ct. R. 7.101(B). Plaintiff's contention that she did not spell out the longer, delayed-appeal period essentially rests on the "silent fraud" theory, which concerns "fraud arising from the suppression of the truth." Roberts v. Saffell, 760 N.W.2d 715, 719 (Mich. Ct. App. 2008). However, "for the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure." Id. (citing US Fidelity & Guaranty Co v. Black, 313 N.W.2d 77, 88 (Mich. 1981)). As noted above, Lord had no duty to explain all of Plaintiff's appeal rights to him because she was not his attorney. Furthermore, Plaintiff's contention only alleges a representation as to the law, which cannot form the basis of a misrepresentation claim. Rosenberg v. Cyrowski, 198 N.W. 905, 906 (Mich. 1924). Thus the fraud claim against Lord fails to state a claim.

As for the IIED claim against Lord, that fails, as well. The elements for such a claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." Johnson v. Wayne County, 540 N.W.2d 66, 74 (Mich. Ct. App. 1995). Here, however, it is clear that Lord had no legal duty to Plaintiff, did not act fraudulently, and did nothing else actionable. Thus, there is no plausible basis for finding "extreme and outrageous" conduct, and Plaintiff cannot sustain an IIED a claim against her.

With regard to Ellis and Williams, the Court will not dismiss any claims at this time. They are arguably "state actors," and the Court cannot, without the benefit of full briefing, conclude that they had no legal duties to Plaintiff. Ellis, as a support specialist within the Michigan Office of Child Support, may have had a legal duty to a putative father. Without full briefing by all parties, this Court cannot now determine that issue.[1] Thus the Court cannot now dismiss the federal claims or the gross negligence claim against Ellis. Nor can the Court dismiss the fraud claim. Plaintiff's theory is that Ellis intentionally misrepresented whether the termination of his rights had already taken place. The Court cannot now determine that the claim suffers from a pleading defect or is implausible. The same is true of the IIED claim, given that that there may be actionable conduct amounting to a violation of the Constitution or state law.

---

[1] The R&R concluded that Ellis "had no constitutional duty–or for that matter, any legal duty–to act on that information. See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989) and Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748 (2005), together establishing that a plaintiff has neither a substantive or procedural due process right to government protection against third parties." R&R at 6. In DeShaney, the court held that a child and his mother had no viable § 1983 claim against the state's protective-agency officials for failure to protect the minor from violent abuse by his father, reasoning that the Due Process Clause does not impose any duty on state actors, except in limited circumstances, to protect citizens from the abuse of others. In Town of Castle Rock, the court held that the person to be protected under personal protection order had no viable § 1983 claim against police officers who refused to enforce the order. Plaintiff's case appears to be quite distinguishable because he does not base his case on a failure to protect him from the abuse of third parties or the failure to enforce a court order. In any case, the uncertainty of whether the authorities cited in the R&R are pertinent highlights the appropriateness of deferring a ruling until full briefing.

The same can be said as to Williams, a DHS legal affairs liaison, who may also have had a legal duty to Plaintiff. Whether any claims against Williams are implausible, the Court cannot now say definitively.

Because the R&R recommended dismissal on quasi-judicial immunity grounds as to Defendants Davidson, Wendling, Messing, Bennett, and Wojnarowicz, it did not analyze other grounds for dismissal of those claims. However, the "state actor" and lack-of-duty grounds analyzed as to the other Defendants would not counsel dismissal here of the federal claims or the gross negligence claims. These remaining Defendants are arguably "state actors," and the Court cannot say, without the benefit of full briefing, that these Defendants (except Bennett) had no legal duty to Plaintiff. Because all play some role in child-support and termination proceedings, they may owe some duty to Plaintiff. Thus, for the same reasons set forth as to Ellis and Williams, no claims against Davidson, Messing, Wendling, and Wojnarowicz will presently be dismissed.

The claims against Bennett, however, are dismissible under § 1915 for failing to state a claim upon which relief can be granted. Plaintiff's claims against Bennett are based on Bennett's response to a letter Plaintiff mailed to the St. Claim Circuit Court asking for "all charges, informations, complaints (civil, criminal, probate, family, juvenile, Department of Human Services, child protective services, etc.) and warrants (past or active)" regarding Christa Brinkmeier. Compl. ¶¶ 42-43. Plaintiff alleges that Bennett responded with a letter stating, "[i]n regards to Ms. Brinkmeier, I have searched all 31st Circuit Court records from 1987 through present and have found no records of any kind." Id. These allegations do not state a claim. First, Plaintiff does not allege that there was any misinformation in Bennett's response. Second, because the allegation against Bennett relates to her response to a request involving Christa

10

Brinkmeier – and not Plaintiff's attempts to assert parental rights or obtain information regarding the child-protective proceeding – the allegations against Bennett do not establish any actionable conduct relative to his First Amendment rights, access to the courts, or other legally protectable interests. Third, Plaintiff offers no authority – and the Court is aware of none – holding that an action will lie against a court clerk for supplying even intentionally incorrect information to a member of the public. Accordingly, Bennett is dismissed as a Defendant.

### III. Conclusion

For the foregoing reasons, it is ordered that the R&R (Dkt. 9) is accepted and adopted in part, as follows: accepted and adopted with respect to Defendants Brown, Dunn, Bennett, and Lord, and rejected with respect to all other Defendants. Defendants Brown, Dunn, Bennett, and Lord are dismissed from this case.

In his Objections, Plaintiff requested leave to amend his complaint if the Court found any claims insufficiently pled. However, none of the defects in the dismissed claims could be cured by amendment. Therefore, no amendment would be appropriate.

With regard to Plaintiff's motion for service of complaint by United States Marshal (Dkt. 8), the order of reference to the Magistrate Judge is vacated as to that motion only, and it is granted. Service on Defendants Davidson, Messing, Wendling, Wojnarowicz, Ellis, and Williams shall be effected promptly.

SO ORDERED.


Dated: March 30, 2012                          s/Mark A. Goldsmith
       Flint, Michigan                         MARK A. GOLDSMITH
                                               United States District Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2012.

                                              s/Deborah J. Goltz
                                              DEBORAH J. GOLTZ
                                              Case Manager