UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH III, #241580,                          Case No. 10-13898

                      Plaintiff,                 District Judge Mark A. Goldsmith

v.                                               Magistrate Judge R. Steven Whalen

LYNN M. DAVIDSON, ET AL.,

                      Defendants.
_____ /

**REPORT AND RECOMMENDATION**

Plaintiff Sam Smith III, a prison inmate in the custody of the Michigan Department
of Corrections, has filed a *pro se* civil complaint raising federal civil rights claims,[1] as well
as state law claims. These claims arise out of the termination of his parental rights in the St.
Clair County, Michigan Circuit Court. As Mr. Smith puts it at ¶14 of his complaint, "This
case involves the intentional and grossly negligent acts and omissions of state officials,
which prevented Plaintiff from asserting his parental rights."

Before the Court are Defendant Janice M. Williams' Motion to Dismiss [Doc. #25]
and Defendant Lynn M. Davidson's Motion to Dismiss [Doc. #29], which have been referred
for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons
discussed below, I recommend that both motions be GRANTED.

---

[1] In ¶ 12 of his complaint, Mr. Smith asserts jurisdiction under 28 U.S.C. § 1343,
which gives federal courts original jurisdiction to hear civil rights conspiracy claims
under "any Act of Congress providing for the protection of civil rights." *See* § 1343(a)(4).
This would include claims under 42 U.S.C. § 1983. Because *pro se* complaints must be
liberally construed, *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000), I will construe
this complaint as bringing substantive claims under § 1983.

-1-

# I.   FACTS

The facts as alleged in Mr. Smith's complaint are as follows. In early 2007, he and his then-fiancé, Christa Lyn Brinkmeier, conceived a child, who was born on October 6, 2007. However, both Mr. Smith and Ms. Brinkmeier were arrested in the Spring of 2007, and Mr. Smith was returned to prison as a parole violator. He remains incarcerated, but Ms. Brinkmeier was released from jail in September of 2007. Mr. Smith states that "[u]pon her release, Ms. Brinkmeier cut all ties to Plaintiff." *Complaint*, ¶ 19.

While in prison, Mr. Smith, wishing to "assert his parental rights and to contribute to his child's welfare," sought information as to the whereabouts of Ms. Brinkmeier and their child, Blake Anthony Brinkmeier. He subsequently learned that Defendant Misty Wojnarowicz, an employee of the State Department of Human Services ("DHS") had instituted a neglect and abuse petition in the St. Clair County Circuit Court, before Judge Elwood L. Brown.

The gist of the complaint is that despite numerous inquiries to the Circuit Court and to other Defendants, and despite his statements to State officials that he wished to assert his parental rights, Mr. Smith was not given notice of the parental termination proceedings, was not permitted to participate, and in fact was given erroneous information that impeded his ability to intervene in the State court proceedings. Plaintiff alleges that on March 16, 2008, he wrote to the Macomb County Friend of the Court seeking information about Blake Anthony Brinkmeier. Defendant Davidson, who was the Macomb County Friend of the Court, responded by letter dated March 24, 2008, stating that "the Macomb County Friend of the Court does not have your case at this time.  However a support referral on behalf of your child has been initiated by the Michigan Office of Child Support. I am forwarding your correspondence to the attention of Support Specialist Deborah Ellis." *Complaint*, ¶¶ 27-28.

Plaintiff alleges that on June 11, 2008, he wrote to the Central Paternity Registry of the Michigan Department of Community Health, requesting a copy of his child's birth certificate. He states that Defendant Williams replied, in a letter dated September 7, 2008, that Plaintiff's parental rights had been terminated on July 16, 2008. However, Plaintiff alleges that his rights were not terminated until September 25, 2008, when Judge Elwood Brown entered a termination order. *Id.* ¶¶ 37-41.

Plaintiff asserts the following claims against both Defendants Williams and Davidson: Count I: Interference with his First Amendment right to a family relationship; Count II: Fourteenth Amendment Due Process; Count III: Gross Negligence (Duty to Inform Plaintiff); and Count IV: Gross Negligence (Duty to Inform the Court); Count VI: Intentional Infliction of Emotional Distress. Plaintiff also brings a claim of Fraud or Misrepresentation against Defendant Williams only (Count V).

As relief, Mr. Smith seeks $10 million in compensatory damages, a declaratory judgment that the Defendants violated his rights, and injunctive relief "requiring defendants to take appropriate actions consistent with a finding that they violated Plaintiff's rights."

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

-3-

The United States Supreme Court has altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[2] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[3] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

"Determining whether a complaint states a plausible claim for relief will, as

---

[2] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

[3] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

-4-

the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### III.    ANALYSIS

### A.    Defendant Davidson [Doc. #29]

Lynn Davidson was the Macomb County Friend of the Court. The duties of the Friend of the Court are delineated in M.C.L § 552.505. Each of the duties relates to the Friend of the Court's responsibilities to parties to domestic relation matters pending in the individual Circuit Court, and its responsibilities to the Circuit Court itself. M.C.L. § 552.502(m) defines "domestic relations matter" as "a circuit court proceeding as to child custody, parenting time, child support, or spousal support, that arises out of litigation under a statute of this state." This definition does not include parental termination cases. Moreover, Michigan's statutory scheme regarding termination of parental rights, M.C.L. § 712A.19, *et seq.*, does not provide for Friend of the Court participation.

Plaintiff's complaint does not provide a plausible basis, statutory or otherwise, to conclude that a Friend of the Court in Macomb County has any duty to inform an individual who does not have a domestic relations case (or any other case) in that County of a parental termination proceeding in a St. Clair County. Defendant Davidson correctly informed Plaintiff that there was no case pending in Macomb County. There is no showing or allegation that Davidson even knew–or should have known–about the St. Clair County case. Because Davidson did not owe Plaintiff a duty, all claims against her must be dismissed.[4]

_____

[4] The Opinion and Order declining to *sua sponte* dismiss claims against Davidson [Doc. #11, at 10] noted that "the Court cannot say, without the benefit of full briefing, that these Defendants...had no legal duty to Plaintiff." Having reviewed the pleadings, it appears to the undersigned that in fact Defendant Davidson did not have a legal duty to

In addition, Davidson is entitled to qualified immunity on the constitutional claims. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

In this case, I will first discuss whether the right that Davidson is accused of violating was clearly established. The right in question, however, cannot be a generalized right. "It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir. 1989)(citations omitted). *See also Myers v. Potter*, 422 F.3d 347, 356 (6th Cir.2005) ("[W]e do not assess the right violated at a high level of generality, but instead, we must determine whether the right [is] 'clearly established' in a more particularized ... sense"); *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir.1997) ("Because most legal rights are 'clearly established' at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated").

————————————————

the Plaintiff.

Thus, it is not sufficient to say generally that Davidson violated Plaintiff's First Amendment right to a family relationship or his Fourteenth Amendment right to due process. In this case, it must be shown that Plaintiff had a right to have Davidson inform him of the St. Clair County parental termination proceedings.

I am unaware of any case that requires a County official to ascertain whether there is a termination proceeding, or for that matter any proceeding, in a different County, and to inform a plaintiff of that proceeding. Nor is it plausible to posit that a reasonable person in Davidson's position would know that her actions (or inactions) violated any of Plaintiff's rights, constitutional or otherwise. Defendant Davidson is protected by qualified immunity.[5]

Plaintiff's state law allegations of gross negligence and intentional infliction of emotional distress ("IIED") likewise fail to state a claim. In terms of gross negligence, M.C.L. 691.1407(2) provides immunity to state actors from tort liability unless their actions are grossly negligent. It does not create a cause of action separate from an underlying § 1983 claim. *See VanVorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004) (rejecting plaintiff's claim of "gross negligence" as a cause of action where the claim "is fully premised on her claim of excessive force"); *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (noting that "Michigan courts have consistently 'rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence'")(quoting *VanVorous*).

Moreover, no rational juror could find the Davidson's conduct to be grossly negligent. "Gross negligence" means "'conduct so reckless as to demonstrate a substantial lack of

---

[5] *Holloway v. Brush*, 220 F.3d 767, cited by Plaintiff, dealt with prosecutorial or absolute immunity, and is thus inapplicable to a qualified immunity analysis. Indeed, the *Holloway* Court noted that the question of qualified immunity was not before it. *Id*. at 777.

-7-

concern for whether an injury results.'" *Odom v. Wayne Co,* 482 Mich. 459, 469; 760 NW2d 217 (2008), quoting MCL 691.1407(7)(a). Gross negligence involves "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree,* 263 Mich.App 80, 90; 687 NW2d 333 (2004). In this case, Davidson responded reasonably to Plaintiff's inquiry. She did not provide false information. This falls far short of demonstrating a wilful disregard of substantial risks.

To establish a claim of IIED, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich.at 603. Here, Davidson told Plaintiff correctly that he did not have a case in Macomb County. She breached no legal duty to him. No rational person could call her actions "outrageous." The IIED claim should be dismissed.

For these reasons, Defendant Davidson's Motion to Dismiss should be granted.

-8-

### B.  Defendant Janice Williams [Doc. #25]

Defendant Janice Williams was a Legal Affairs Liaison of the State Department of Human Services ("DHS"). Plaintiff claims that on June 11, 2008, he requested a copy of his child's birth certificate, as well as information about the mother and the approximate date of birth. *Complaint*, ¶ 37. He alleges that in Williams' reply of September 7, 2008, she indicated that parental rights had been terminated on July 16, 2008, and that DHS could not release any additional information. *Id.* ¶ 38. He claims that in fact, parental rights were not terminated until September 25, 2008, two weeks after Williams' reply.

Williams was a state actor. She was not, however, a Protective Services worker, and the complaint does not allege that she had any involvement whatsoever in the St. Clair County termination proceedings. Her role in this case was limited to responding to what was in effect Plaintiff's request under the Freedom of Information Act.  The claims against her are based on her allegedly giving incorrect information as to the date of termination, and failing to advise the St. Clair County Circuit Court that Plaintiff wished to assert his parental rights.

As with Defendant Davidson, Williams, who had no involvement in the St. Clair County proceedings, had no constitutional, statutory, or any other legal duty to inform that Court of anything.[6]

As an FOIA officer, Williams may have had a duty under Michigan's FOIA statute to respond to Plaintiff's request about his son, which she did. But even if she somehow failed

---

[6] This case is distinguishable from *Holloway v. Brush*, *supra*, cited by Plaintiff. In *Holloway*, the defendant, who was alleged to have deliberately withheld information from the plaintiff and the court, was a caseworker who was directly involved in administering a case plan following the children's removal from their father's custody. Defendant Williams had no involvement whatsoever in the St. Clair County termination proceedings, and hence no duty with regard to those proceedings.

-9-

in that statutory duty by providing incorrect information, that would not give rise to a constitutional violation under the First or Fourteenth Amendments.[7] And even if a constitutional violation could be shown, Williams would be protected by qualified immunity under the "clearly established" prong of the *Saucier/Pearson* test. Again, the right in question must be a particularized right, not a generalized right. I have found no case law holding that providing incorrect information in response to a FOIA request gives rise to any constitutional claim, or that a reasonable person would know that providing incorrect information was a constitutional violation.[8]

For the reasons discussed in the preceding section with regard to Defendant Davidson, Plaintiff has not made plausible claims of gross negligence or IIED against Defendant Williams.

In Count V, Plaintiff alleges "fraud or misrepresentation" against Williams. The elements of common-law fraud are: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Cummins v. Robinson Twp,* 283 Mich.App 677, 695–696; 770 NW2d 421 (2009), quoting *M & D, Inc v. McConkey,* 231 Mich.App 22, 27; 585 NW2d 33 (1998).

---

[7] Plaintiff has not raised a claim under Michigan's FOIA statute, M.C.L. 15.231, *et seq.*

[8] Williams had no involvement with the parental termination case, and there is no allegation or showing that she even had any knowledge of the Plaintiff before she received his request. At most, Plaintiff has plausibly alleged negligent, not intentional disclosure of incorrect facts. *See Complaint*, ¶ ¶ 37-40. The bare-bones allegations in the complaint regarding intentional misconduct "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950.

-10-

The facts in the complaint do not establish a plausible claim of fraud as to elements (3) and (4). Again, there are no facts showing that prior to Plaintiff's inquiry, Williams knew him, knew the mother of the child, or knew anything about the parental termination proceedings in St. Clair County. Plaintiff has pled no non-speculative facts that Williams had any reason to believe that the information she provided was incorrect, or that she misled the Plaintiff with the intent that he would rely on false information to his detriment. In *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011), the Court stated:

> "Moreover, even if the complaint contains sufficiently 'well-pleaded' allegations, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.' *Id*. [*Iqbal*] at 1950. A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic.' or 'delusional.' *Denton v. Hernandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)) (quotation marks omitted)."

In assessing the plausibility of a claim, *Iqbal* "requires the reviewing court to draw on its judicial experience and common sense." 129 S.Ct. at 1950. In this case, the claim that Defendant Williams–who had no knowledge of and nothing to do with Plaintiff's situation before she received his letter, and who did nothing more than mechanically respond to a FOIA request–intentionally defrauded him so that he would be unable to challenge parental termination proceedings in a remote County[9], is simply not plausible. The fraud claim should therefore be dismissed.

## C.   Official Capacity Claims [Both Motions]

Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S.

---

[9] Plaintiff has pled no facts showing that Williams resided in, worked in, or had any connection to St. Clair County.

-11-

706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Thus, Davidson and Williams in their official capacities are both immune from Plaintiff's claim for monetary damages.

It is true that "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising*, 427 F.3d at 358 -359. In this case, however, there is, as a practical matter, no prospective injunctive relief available that would enjoin either Davidson or Williams from violating federal law. First, as discussed above, there was no violation of federal law in the first place. Second, what would Plaintiff have Davidson and Williams do? Inform the St. Clair County Circuit Court that he wishes to challenge the parental termination decision? Tell him that there is (or was) a pending proceeding in St. Clair County? Provide him with the actual date of the St. Clair County termination decision? Apart from the absurdity of such a request, this would relate only to the Defendants' past conduct, and would not provide any prospective relief to the Plaintiff. The official capacity claims against Davidson and Williams must be dismissed.

Finally, although I am recommending dismissal of all claims against these Defendants, I would again remind Mr. Smith that he is not without remedy in the Michigan courts. If he wishes to challenge an order or judgment terminating his parental rights, on the ground that he was not properly notified of the action, he arguably has recourse under M.C.R. 2.612(C)(3), which provides:

> "(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding;

-12-

to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court."

## IV.   CONCLUSION

For these reasons, I recommend that Defendant Janice M. Williams' Motion to Dismiss [Doc. #25] and Defendant Lynn M. Davidson's Motion to Dismiss [Doc. #29] be GRANTED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  March 6, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 6, 2013.

Sam Smith, #241580                                    s/Johnetta M. Curry-Williams
Alger Maximum Correctional Facility                   Case Manager
Industrial Park Drive
PO Box 600
Munising, MI 49862-0600