UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH III,

       Plaintiff,                         Case No. 10-13898

vs.                                        HON. MARK A. GOLDSMITH

LYNN M. DAVIDSON, et al.,

       Defendants.
_____/

**OPINION AND ORDER
(1) ACCEPTING THE REPORT AND RECOMMNEDATION OF THE MAGISTRATE
JUDGE DATED MARCH 6, 2013 (DKT. 37), (2) OVERRULING PLAINTIFF'S
OBJECTIONS (DKT. 39),
and (3) GRANTING DEFENDANTS' MOTIONS TO DISMISS (DKTS. 25, 29)**

**I.  INTRODUCTION**

Plaintiff Sam Smith III, a state prisoner at Alger Correctional Facility in Munising, Michigan, filed a pro se complaint, alleging violations of his federal civil rights and state law claims. Defendants are various employees of the State of Michigan. Plaintiff claims that the "intentional and grossly negligent acts and omissions of state officials . . . prevented Plaintiff from asserting his parental rights." Compl. ¶ 14 (Dkt. 1). Plaintiff's claims emanate from his efforts to locate a child that he fathered, whose birth mother, Christa Brinkmeirer, broke off contact after Plaintiff was returned to prison as a parole violator. Id. ¶¶ 15-21. Plaintiff contacted a number of government agencies, seeking their assistance in establishing paternity, but ultimately his rights were terminated in a child-protective proceeding in St. Clair County, of which he claims not to have had notice. Id. ¶¶ 23-40. The instant lawsuit asserts claims against various governmental officials whom Plaintiff claims caused him to lose his parental rights.

1

Before the Court is a Report and Recommendation (R&R) issued by Magistrate Judge R. Steven Whalen (Dkt. 37) on March 6, 2013. The factual and procedural background of this case, along with the standard of review and legal principles governing motions to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. The R&R recommends granting two pending motions to dismiss made under Rule 12(b)(6) for a failure to state a claim for which relief can be granted. One motion was filed by Defendant Lynn. M. Davidson (Dkt. 29); the other motion was filed by Defendant Janice M. Williams (Dkt. 25).[1] Plaintiff objects to the Magistrate Judge's recommendations to dismiss all claims asserted against both Defendants Davidson and Williams. Davidson and Williams filed responses to Plaintiff's objections (Dkts. 40 and 42). The Court reviews de novo those portions of the R&R to which a specific objection has been made. Fed. R. Civ. P. 72(b)(3). For the reasons that follow, the Court will accept the recommendations in the R&R, overrule Plaintiff's objections, and grant the motions to dismiss.

## II. ANALYSIS

In his objections, Plaintiff contends that the Magistrate Judge erred in his analysis of each of Plaintiff's claims against both Defendants. The Court addresses each of Plaintiff's ten objections in turn.

### A. Objections regarding only Defendant Davidson

In his complaint, Plaintiff alleges that

> On March 16, 2008, still without knowledge of the case, Plaintiff wrote the Mt. Clemens Friend of the Court, seeking information on his child. He provided Christa Brinkmeier's name and he said he would like custody of his child and that he was willing to pay child support and take a DNA test to prove paternity.

---

[1] Williams also seeks dismissal of the claims against her under Rule 12(b)(1) for lack of subject-matter jurisdiction.

> On March 24, 2008, Defendant LYNN DAVIDSON, Macomb County Friend of the Court, responded to Plaintiff's letter, saying that the "Macomb County Friend of the Court does not have your case at this time. However, a support referral on behalf of your child has been initiated by the Michigan Office of Child Support. I am forwarding your correspondence to the attention of Support Specialist DEBORAH ELLIS."
>
> LYNN DAVIDSON did not mention the child-protective proceeding then pending in the St. Clair Circuit Court.
>
> LYNN DAVIDSON sent a copy of her letter to the St. Clair Prosecuting Attorney's Office.

Compl. ¶¶ 27-30 (Dkt. 1) (original capitalization). The complaint refers to Davidson four more times, as she is listed with other defendants in four counts: Count I (first amendment violation), Count III (gross negligence – failure to inform Plaintiff), Count IV (failure to inform court); and Count VI (intentional infliction of emotional distress).

### 1. Plaintiff's first objection

In his first objection, Plaintiff argues that the R&R incorrectly concluded that he failed to state a claim against Davidson. Pl.'s Objections at 3 (Dkt. 39). Plaintiff contends that Davidson "assumed a common-law duty of reasonable care when she chose to respond to Plaintiff's letter and that she violated his federal rights." Id. Plaintiff relies on Fultz v. Union Commerce Associates, 683 N.W.2d 587 (Mich. 2004) and Davis v. Venture One Construction, Inc., 568 F.3d 570 (6th Cir. 2009). In response, Davidson distinguishes Fultz and Davis, arguing that the issue in those cases "was whether a contractor had a duty to a third party pursuant to the Restatement Torts, 2d, § 324A." Def.'s Resp. at 2 (Dkt. 40).

As the R&R noted, the complaint does not provide a plausible basis to find that a duty attached to Davidson's actions, "statutory or otherwise." R&R at 5. According to the complaint, Davidson responded to Plaintiff's inquiry and forwarded his letter in her role as the Macomb County Friend of the Court, but failed to mention to Plaintiff that there was a child-protective

3

proceeding in St Clair County Circuit Court. Notably, the complaint does not allege that Davidson knew of that proceeding.

The office of Friend of the Court was established by the Michigan Legislature in the Friend of the Court Act. Mich. Comp. Laws § 552.501. By statute, there is an office of Friend of the Court in each judicial circuit, and the Friend of the Court is an employee of the circuit court, operating under the supervision and direction of the chief circuit judge. Mich. Comp. Laws § 552.503(4), (5). A Friend of the Court has many statutorily defined duties, such as informing parties to divorce or custody proceedings of their rights. See Mich. Comp. Laws § 552.505(a)-(h). But a Friend of the Court does not participate in proceedings for the termination of parental rights. See Mich. Comp. Laws § 712A.19(5) (listing parties to be served in termination proceeding). Plaintiff does not allege that he was a party to a case before the Macomb County circuit court concerning a divorce or custody proceeding. Thus, Davidson had no statutory duty to Plaintiff.

Plaintiff argues that Davidson had a common law duty of care simply because she responded to his letter. But his argument is based on two non-analogous cases, Fultz and Davis, which address whether a duty was owed and breached by creation of a physical hazard by a contractor that resulted in injury to a third party. In Fultz, the plaintiff sued a parking lot owner and its snow removal company for her slip-and-fall injuries. The Michigan Supreme Court found no duty because the snow removal company had created no physical hazard; it had simply failed to perform its contract, giving rise to a potential breach of contract claim assertable by the property owner with whom it had contracted, but no negligence claim assertable by the plaintiff. Fultz, 683 N.W.2d at 468-469. In Davis, an employer had hired a contractor to remodel its facilities, and the plaintiff was injured by an unhinged door that the contractor had leaned against

4

a wall outside the construction zone; the court of appeals found a duty to the injured plaintiff because the defendant's placement of the unhinged door did create a hazard. Davis, 568 F.3d at 577.

The physical injury context of those cases is not remotely similar to the context of the present case. Nor can Davidson's failure to inform Plaintiff of the pendency of the child-protective proceeding be deemed the creation of a "hazard" of a non-physical nature. Plaintiff has not furnished any authority recognizing a duty to speak in circumstances analogous to those in the present case.

To impose a common-law duty of reasonable care, under Michigan law, a court considers (i) the relationship of the parties, (ii) the foreseeability of the harm, (iii) the degree of certainty of injury, (iv) the closeness of connection between the conduct and injury, (v) the moral blame attached to the conduct, (vi) the policy of preventing future harm, and, and (vii) the burdens and consequences of imposing a duty and the resulting liability for breach. Rakowski v. Sarb, 713 N.W.2d 787, 795 (Mich. Ct. App. 2006). "The inquiry is ultimately a question of fairness involving a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Id. (internal quotations omitted).[2]

Under the forgoing Rakowski factors, the Court concludes that Michigan common law imposed no duty on Davidson for her answering an inquiry from Plaintiff. The relationship between the parties, the foreseeability of any harm, the degree of certainty, and the connection of the conduct, are tenuous and threadbare. Davidson is blameless, as it appears to the Court that she merely attempted to assist Plaintiff by forwarding his letter. Further, Plaintiff fails to allege

---

[2] Plaintiff argues that the question of duty is for a jury to decide; but the law is to the contrary. Harts v. Farmers Ins. Exchange, 597 N.W.2d 47, 50 (Mich. 1999) ("Whether a duty exists is a question of law that is solely for the court to decide.").

in his complaint that Davidson, an employee of the Macomb County Friend of the Court, even knew about the child-protective proceeding in St. Clair County. Regardless of her knowledge, nothing in the law would create a duty on the part of an employee in one county's court system to search out information regarding the pending matters in another county's court system for which they have no responsibility and report it to an inquiring member of the public. Indeed, public policy would counsel against imposing such a duty on Friends of the Court because this would expose these agencies to time-consuming and expensive litigation, draining already exhausted agency personnel and budgets, regarding matters not statutorily assigned to them.

Accordingly, the Court overrules Plaintiff's objection.[3]

### 2. Plaintiff's second objection

In his second objection, Plaintiff argues that the R&R improperly concluded that Davidson enjoys qualified immunity on the constitutional claims. Pl.'s Objections at 5. Plaintiff argues that he had a clearly established right to obtain information about his alleged child's termination proceedings and that the R&R misapplied Holloway v. Brush, 220 F.3d 767 (6th Cir. 2000). Additionally, Plaintiff argues that, as Davidson was familiar with domestic relations matters because she was a Friend of the Court and had knowledge of "the pending parental-rights termination proceeding," she would have known that it was unlawful to withhold information about the proceeding from Plaintiff. Id. at 7.[4] In response, Davidson argues that the Sixth Circuit decided Holloway on absolute immunity grounds and that the court did not address

---

[3] The title of Plaintiff's first objection referenced that Davidson also owed Plaintiff a "constitutional duty of non-interference with his family relations," in addition to a common-law duty. However, Plaintiff never developed this argument in this objection or cited appropriate authority. Accordingly, this argument is deemed waived. See Rivet v. State Farm Mut. Auto. Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped.").

[4] Although Plaintiff claims in his objections that Davidson knew of the St. Clair County parental-rights termination proceeding, no such allegation appears in the complaint.

6

qualified immunity because it was never raised by the defendant. Def.'s Resp. at 3 (Dkt. 40). The Court disagrees with Plaintiff and overrules Plaintiff's objection.

As the R&R explained, to overcome qualified immunity for a state official, a plaintiff must show that the right was clearly established, and that the defendant violated that right. Danese v. Asman, 875 F.2d 1239, 1242 (6th Cir. 1989). The Sixth Circuit has ruled that "to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself." Ohio Civil Serv. Emps. Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir. 1988). But "a few admittedly novel opinions from other circuit or district courts are not enough to form the basis for a clearly established constitutional right in the Sixth Circuit." Id. Moreover, "if the test of 'clearly established law' were to be applied" with generality, plaintiffs "would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. at 1177 (citing Anderson v. Creighton, 483 U.S. 635 (1987)).

The case relied upon by Plaintiff, Holloway, did not clearly establish the "right to truthful information from state employees regarding the status of pending parental-rights termination proceedings regarding a parent's child," as Plaintiff contends. Pl.'s Objections at 5. In Holloway, a mother lost track of her two children, after being thrown out of her Oklahoma home by her husband, who then absconded with the children to Ohio in 1988. Holloway, 220 F.3d at 770. After a few years, the children, now in Clermont County, Ohio, were living in squalor. Id. The father could not support the children and Clermont County Department of Human Services (CCDHS) initiated proceedings to terminate his custody rights, to award permanent custody to CCDHS, and to place the children for adoption. Id. During this process, CCDHS assigned the children a social worker, who was responsible for administering the children's case plan. Id. In

late 1992, the social worker provided an affidavit and testimony for the case plan, including that the children's mother's location was unknown. Id. By January 1993, an Ohio state court was considering whether to award permanent custody to CCDHS, which had temporary custody. Then, in May 1993, the social worker became aware of the mother's existence and that she was seeking her children. Id. Although CCDHS only had temporary custody, the social worker told the mother that the agency had permanent custody. Id. at 771. The social worker also did not bring to the Ohio state court's attention the existence of the mother. Id. The Ohio state court then awarded CCDHS permanent custody. Id.

After failing in the state courts to have the custody order overturned, the mother filed suit against the State of Ohio, the Ohio Department of Human Services, and the social worker. Id. at 772. The district court granted summary judgment to the defendants, but the Sixth Circuit reversed the grant for the social worker, holding that she did not enjoy absolute immunity for her conduct in the case. Id. at 770. The court explained that the conduct at issue was beyond the scope of absolute immunity:

> Once again, absolute immunity extends to social workers only when they are acting in the capacity of legal advocates. It is apparent that Ohio law does not envision a caseworker's principal function as that of an advocate, although at a certain stage in custody proceedings a caseworker might be called by the prosecutor to present reports or make recommendations that, functionally, constitute advocacy. But the acts for which [the social worker] is being sued – failing to notify the trial court that Plaintiff had made contact and wished to assert her parental rights, telling Plaintiff that her rights had been severed when they had not yet been, and withholding information that would have enabled Plaintiff to raise her rights in court before her rights were severed – do not come within that description.

Holloway, 220 F.3d at 776 (emphasis added). Notably, the issue of qualified immunity was not before the court because the social worker had "not claimed qualified immunity." Id. at 777.

8

Thus, Holloway addressed the doctrine of absolute immunity as applied to a social worker who participated in termination proceedings under Ohio law. Plaintiff's complaint implicates the doctrine of qualified immunity as it applies to a Friend of the Court, who had no participation in termination proceedings under Michigan law. The cases are factually and legally distinct; Holloway does not control the outcome of Plaintiff's case.

Instead, in this case, Plaintiff is attempting to convert the rule of qualified immunity into a rule of unqualified liability by alleging the violation of an extremely abstract right – namely, the right of family integrity. But Plaintiff is attempting to avoid immunity by refashioning that right into a right to demand information from a court employee regarding a case from another court for which she has no responsibilities. No such right has been recognized, and certainly no such a right has been clearly established in the law.[5]

Therefore, Plaintiff's second objection is overruled.

### 3. Plaintiff's third objection

In his third objection, Plaintiff argues that the R&R improperly concluded that Plaintiff has not stated a claim for gross negligence. Pl.'s Objections at 7. Plaintiff argues that Davidson's conduct meets the standard for gross negligence under Tarlea v. Crabtree, 687 N.W.2d 333 (Mich. Ct. App. 2004), and that the R&R erred in reasoning that "'no rational juror could find David's conduct to be grossly negligent.'" Id. at 8 (quoting R&R at 7). In response, Davidson argues that authority relied upon by Plaintiff is distinguishable because the case turned

---

[5] Furthermore, given that his complaint does not allege that Davidson knew of the St. Clair County child-protective proceeding, Plaintiff appears to be asserting such a right even if the employee lacks the information to which Plaintiff claims to be entitled. Plaintiff has offered no case recognizing such an untenable theory. By contrast, in Holloway, the social worker clearly possessed information about a proceeding in which she was personally involved – a circumstance far different from the context of our case.

upon an analysis of proximate cause, and that the R&R applied the proper standard for gross negligence.  Def.'s Resp. at 3-4 (Dkt. 40).

The Court rejects Plaintiff's argument.  As explained above, Davidson had no duty of care owed to Plaintiff.  In the absence of a duty, Plaintiff cannot state a claim for gross negligence.  Rakowski, 713 N.W.2d at 627 (in a claim for gross negligence under Mich. Comp. Laws § 691.1407, "a plaintiff must first establish that the governmental employee defendant owed a common-law duty to the plaintiff").

Accordingly, the Court overrules Plaintiff's third objection.

### 4. Plaintiff's fourth objection

In his fourth objection, Plaintiff argues that the R&R erred in concluding that Plaintiff failed to state a claim for intentional infliction of emotional distress (IIED).  Pl.'s Objections at 9-11.  Plaintiff contends that the R&R misapplied Rule 12(b)(6), and that Davidson's conduct was "shocking" and "blatantly unconstitutional."  Id. at 9-10.  In response, Davidson argues that Plaintiff has failed to allege outrageous conduct.  Def.'s Resp. at 4. (Dkt. 40).  Davidson also argues that "all state law or common law claims against her are barred due to the state legislature's granting of an exclusive administrative remedy for claims against a Friend of the Court."  Id.  (citing Dryden v. Coulon, 378 N.W.2d 767 (Mich. Ct. App. 1985)).[6]  The Court rejects Plaintiff's argument.

---

[6] Dryden involved a claim by a child-plaintiff that the Macomb County Friend of Court abdicated his duty to investigate the child-plaintiff's home life during a contested custody proceeding.  Dryden, 378 N.W.2d at 767-768.  The child-plaintiff alleged that she sustained injuries that should have been discovered by the Friend of Court.  Id. at 768.  The Michigan Court of Appeal affirmed the trial court's grant of summary judgment to the Friend of Court, holding that claims for the failure to perform the investigative and reporting duties imposed by the Friend of the Court Act were restricted to the administrative grievance procedures under Mich. Comp. Laws § 552.526.  Id. at 769.  As regards Plaintiff's claim, Dryden is not applicable

As explained by the Supreme Court, a complaint must "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim for IIED requires "extreme and outrageous conduct." Graham v. Ford, 604 N.W.2d 713 (Mich. 1999). Liability for an IIED claim "has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Jones v. Muskegon Cnty., 625 F.3d 935, 948 (6th Cir. 2010). As noted in the Court's discussion of Plaintiff's second objection, Plaintiff never alleged that Davidson knew of the St. Clair County proceeding, and there are no facts he has asserted in his filings which make such an allegation plausible. Here, Davidson merely forwarded a letter and wrote back to Plaintiff. She did not act in an extreme or outrageous fashion.

Accordingly, Plaintiff's fourth objection is overruled.

**B. Objections regarding only Defendant Williams**

In his complaint, Plaintiff alleges that

> On September 7, 2008, Defendant JANICE M. WILLIAMS, Legal Affairs Liason [sic] of DHS, wrote Plaintiff, saying that the DHS had received his request for information regarding his child and his desire to establish paternity but that his parental rights had been terminated on July 16, 2008, and that DHS could not release any additional information to him about the child.
>
> Neither JANICE WILLIAMS, the other defendants, nor anyone else who Plaintiff contacted or who knew of Plaintiff's efforts to assert his parental rights, informed the court that Plaintiff was attempting to seek custody and assert his parental rights.
>
> Contrary to JANICE WILLIAMS'S assertion, Plaintiff's parental rights were not terminated on July 16, 2008; rather, they were terminated on September 25, 2008, two weeks after JANICE WILLIAMS told Plaintiff that his rights had been terminated.

---

because Plaintiff has not alleged that Davidson failed her duties to investigate or report regarding a child in a proceeding with the Friend of the Court.

11

Compl. ¶¶ 38-40 (original capitalization).  The complaint refers to Williams five more times, as she is listed with other defendants in five counts: Count I (first amendment violation), Count III (gross negligence – failure to inform Plaintiff), Count IV (failure to inform court); Count V (fraud), and Count VI (intentional infliction of emotional distress).

### 1.  Plaintiff's fifth objection

In Plaintiff's fifth objection, he re-asserts the argument he made regarding his objection to the R&R's analysis of common-law duty for Defendant Davidson.  Pl.'s Objections at 11.  In response, Williams argues that there is no support for Plaintiff's theory that "simple negligence creates a cause of action for violation of his constitutional rights."  Def.'s Resp. at 3 (Dkt. 42).  Additionally, Williams argues that Plaintiff does not have a constitutional right to a correct Freedom of Information Act (FOIA) response and that, upon receipt of Williams' response, Plaintiff was not dissuaded from attempting to assert his alleged parental rights.  Id. at 3-4.  The Court rejects Plaintiff's argument because Williams, a Legal Affairs Liaison for the Michigan Department of Human Services, did not owe a duty to Plaintiff.

The R&R points out that Williams was a Legal Affairs Liaison who had the duty to respond to FOIA inquiries.  R&R at 9.  According to the complaint, Plaintiff wrote to the Central Paternity Registry of the Michigan Department of Community Health on June 11, 2008.  Compl. ¶ 37.  This, it appears, triggered Williams' response some three months later.  As alleged in the complaint, Williams provided the wrong date that Plaintiff's parental rights were terminated – July 16, 2008 instead of September 25, 2008.

In weighing the Rakowski common-law duty factors, the Court finds that a common-law duty did not attach to Williams' actions.  Like with Davidson, the factors do not come close to supporting Plaintiff's theory.  Rakowski, 713 N.W.2d at 795.  Assuming that the facts in the

12

complaint are true, as the Court must, Williams' merely made a mistake in writing to Plaintiff about the termination date of his parental rights. There are no allegations that she was involved in the proceedings or had some knowledge or relationship with Plaintiff. Her duties related to FOIA requests, and no court has held that a mistaken statement in response to a FOIA request is actionable. Consequently, the Court declines to impose a common-law duty, and Plaintiff's fifth objection is overruled.

### 2. Plaintiff's sixth objection

In Plaintiff's sixth objection, he argues that the R&R incorrectly found that Williams had qualified immunity for his federal civil rights claims. Plaintiff contends that "a state official's provision of false information about a pending child-custody proceeding to a parent seeking to assert his parental rights, resulting in the parent losing his parental rights, violates the Constitution." Pl.'s Objections at 12. In response, Williams argues that Plaintiff has changed his argument from his response to Williams' motion to dismiss, where he asserted that Williams interfered with his right to raise his family, to the argument he presents in his objections – essentially, a right to information. Def.'s Resp. at 4 (Dkt. 42). The effect of changing arguments is an improper attempt to amend his complaint. Id. Williams also argues that the right alleged by Plaintiff is not clearly established and that Plaintiff's reliance upon Holloway is misplaced. Id. at 4-5.

The Court disagrees with Plaintiff because no right exists regarding "a state official's provision of false information about a pending child-custody proceeding to a parent seeking to assert his parental rights, resulting in the parent losing his parental rights"

As discussed above in regards to Davidson's qualified immunity, a right must be "clearly established." This Court must locate such a right in a "binding precedent by the Supreme Court, its court of appeals or itself." Ohio Civil Serv. Emps. Ass'n, 858 F.2d at 1177. The Court is

unaware of any court decision recognizing such a right. Furthermore, as discussed above, Williams did not have a role in any way analogous to the social worker in Holloway, who was intimately involved with the parental-rights termination proceedings by providing testimony and submitting an affidavit.

Therefore, Plaintiff's sixth objection is overruled.

### 3. Plaintiff's seventh objection

In his seventh objection, Plaintiff argues that he has stated a gross negligence and IIED claims against Williams. Pl.'s Objections at 14. Plaintiff relies upon his arguments made against Davidson for both claims. Id. In response, Williams argues that her FOIA response was not outrageous conduct and did not amount to reckless conduct. Def's Resp. at 5-6, 8-9 (Dkt. 42).

The Court rejects Plaintiff's argument because Williams' conduct was not outrageous, so as to support an IIED claim, nor did Williams owe Plaintiff any duty that would support a claim for gross negligence. While Williams issued a FOIA response that may have contained incorrect information, she had no role in the termination proceeding.

Therefore, the Court overrules Plaintiff's seventh objection.

### 4. Plaintiff's eighth objection

In his eighth objection, Plaintiff argues that the R&R erred in finding that he failed to state a fraud claim. Pl.'s Objections 14-17. Plaintiff asserts that "judicial experience and common sense teach" that whether Williams' had intent to mislead Plaintiff is "quite 'plausible.'" Id. at 15. In response, Williams argues that Plaintiff "has not pleaded any non-speculative facts that Williams had any reason to believe that the information she provided was incorrect, or that she misled the Plaintiff with the intent that he would rely on false information to his detriment." Def.'s Resp. at 6 (Dkt. 42).

Under Michigan law, fraud requires the following elements:

14

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. . . . Further, to establish a claim of fraudulent misrepresentation, the plaintiff must have reasonably relied on the false representation. There can be no fraud where a person has the means to determine that a representation is not true.

Cummins v. Robinson, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009) (internal citations and quotations omitted).

The R&R correctly recited the elements for fraud and found that two elements were lacking – (i) that Williams knew the information she provided was false, or made it recklessly, without knowledge of its truth as a positive assertion and (ii) Williams made the representation with the intention that Plaintiff would act upon it. R&R at 11. The R&R then recommended that Plaintiff's fraud claim was not plausible under the facts alleged in the complaint. Id.

The Court agrees. The gist of the complaint is that Plaintiff sent a letter to a Michigan state agency requesting information and a FOIA officer sent him a response, albeit one with incorrect information. The complaint is devoid of allegations of Williams' knowledge that the date was incorrect or plausible facts demonstrating an otherwise wrongful intent. Additionally, the complaint is devoid of facts indicating that Plaintiff relied upon the letter. Plaintiff does not allege facts showing that Williams' letter somehow dissuaded him or prevented him from asserting his rights. Rather, in the complaint, Plaintiff explains that after receipt of Williams' letter, he kept investigating about the child he alleges is his. Compl. ¶¶ 42, 44, 45, 47, 49, 54, 57, 59, 60. See Cummins, 770 N.W. 2d at 437 (holding that fraud claim failed because plaintiffs

could not establish reasonable reliance upon alleged fraudulent statements). Therefore, Plaintiff has failed to assert a plausible claim for fraud.[7]

Consequently, the Court overrules Plaintiff's eighth objection.

### C. **Objection regarding official capacity claims**

In his ninth objection, Plaintiff argues that the R&R's conclusion that the Eleventh Amendment bars his claims for monetary and injunctive relief against Davidson and Williams is erroneous. Pl.'s Objections at 17. In response, Davidson and Williams both argue that the relief requested by Plaintiff is improper because it targets past acts and not continuing conduct. Def.'s Resp. at 4-5 (Dkt. 40); Def.'s Resp. at 9-10 (Dkt. 42). The Court rejects Plaintiff's argument.

Plaintiff sued Davidson and Williams in both their personal and official capacities. Compl. ¶¶ 2, 9. To the extent that Plaintiff sued the Defendants in their official capacities for monetary damages, the R&R properly concluded that the Eleventh Amendment bars his claims. Ernst v. Rising, 427 F.3d 351, 358 (6th Cir. 2005).

The R&R was also correct in holding that Eleventh Amendment "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." Id. at 358. Permissible injunctive relief "serves directly to bring an end to a present violation of federal law," even though it may cause a "substantial ancillary effect on the state treasury." Id. However, as explained above, Defendants have not violated Plaintiff's federal civil rights. Without a violation of such federal rights, injunctive relief is unavailable.

---

[7] While Plaintiff urges the Court to consider a number of facts, such as Williams' interest in keeping her agency's costs down and that her agency has a history of preventing fathers from participating in termination proceedings, none of these facts is set forth in the complaint. See Pl.'s Objections at 16. Even if they were, none of these facts pertains specifically to Williams.

Injunctive relief is barred under the Eleventh Amendment for the additional reason that Plaintiff effectively seeks to adjudicate the propriety of a past action, rather than to prevent future harm. The Eleventh Amendment bars injunctive relief "that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law, . . . ." Id. at 367. Here, Plaintiff requests a "temporary and permanent injunction requiring defendants to take appropriate actions consistent with a finding that they violated Plaintiff's rights," no present actions are threatened against Plaintiff; thus the injunction he requests appears nothing more than an attempt to adjudicate the alleged impropriety of past actions. Under the Eleventh Amendment, injunctive relief of that nature is not appropriate.

Accordingly, the Court overrules Plaintiff's ninth objection.

### D. Objection regarding access to courts and due process claims

In Plaintiff's tenth objection, Plaintiff argues that, given the allegations in the complaint, his arguments in his response to Williams' motion to dismiss, and construing his complaint liberally, he has asserted access-to-courts and due process claims against Davidson and Williams, which the R&R did not address. Pl's Objections at 20-21. In a footnote, the R&R stated that it construed the complaint liberally to include substantive claims under 42 U.S.C. § 1983, which would include access-to courts and due process claims. R&R at 1 n.1.

The Court agrees with the R&R's conclusion regarding claims under § 1983 and will dismiss any such claims against Davidson and Williams. First, regarding the access-to-court claim, "a prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel." Holt v. Pitts, 702 F.2d 639, 640 (6th Cir. 1983). A plain reading of the complaint shows that Plaintiff has not alleged

17

that the state has failed to provide him with the legal tools to assert his access to the courts. Nor have any of the actions or non-actions alleged against Davidson and Williams ever been recognized as denying a plaintiff of access to the courts. No plausible facts are alleged that either Defendant intended or understood that their actions would bar Plaintiff from access to the courts.[8] Nor are there any plausible facts alleged that their actions actually caused Plaintiff to be barred from access to the courts. Clark v. Johnston, 413 F. App'x 804, 817 (6th Cir. 2011) (explaining that a prisoner "must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct").

Plaintiff also fails to state a due process claim. Plaintiff argues that Defendants told him his rights were severed and withheld information from him. Pl.'s Objections at 20. Plaintiff's allegations do not make it clear whether he is alleging a procedural due process or a substantive due process violation. Regardless, as discussed below, either claim would fail.

Procedural due process claims are concerned with deprivations life, liberty, or property without due process of law. Handy-Clay v. City of Memphis, 695 F.3d 531, 546 (6th Cir. 2012). "When reviewing a procedural due process claim, we must determine whether a protected liberty or property right is at stake and, if so, what process is due." Id. Without reaching whether Plaintiff had a constitutionally protected liberty or property interest, the Court is at a loss to understand what process would be due. Davidson forwarded Plaintiff's inquiry, and owed him no process to begin with. Williams responded to his FOIA request and, to the extent that Plaintiff should have more process, Michigan's FOIA statute provides for appeals for FOIA

---

[8] Some courts require a showing of intent where a prisoner has asserted an access to courts claim against a prison official who has allegedly tampered with the prisoner's legal mail. See Davis v. Goord, 320 F.3d 346, 351-352 (2nd Cir. 2003) (explaining that "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face.").

responses. Mich. Comp. Laws § 15.240. There is no other process due Plaintiff, and no process of which he has been deprived.

Substantive due process claims are "a vehicle to limit various aspects of potentially oppressive government action." Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996). Generally, they are either (i) claims that an individual has been deprived of a particular constitutional guarantee, or (ii) claims that the government has acted in a way that shocks the conscience. Handy-Clay, 695 F.3d at 547 (citations omitted). Conduct that shocks the conscience must be "so 'brutal' and 'offensive' that it does not comport with traditional ideas of fair play and decency." Id. at 547-548 (internal citations and quotations omitted). For Plaintiff, he has not been deprived a particular constitutional guarantee; as explained above, neither Davidson nor Williams violated his federal civil rights. Also, in a manner analogous to the analysis of IIED, the conduct at issue was not brutal or offensive, but rather adhered to traditional ideas of fair play and decency. According to Plaintiff's allegations, Davidson merely forwarded a letter, as a matter of courtesy, and Williams mechanically responded to a FOIA request, in conformity with her duties. No conduct alleged in the complaint shocks the conscience.

### III. CONCLUSION

For the reasons stated above, the Court overrules Plaintiff's objections and grants Defendants' motions to dismiss (Dkts. 25 and 29).

SO ORDERED.

Dated: March 29, 2013  s/Mark A. Goldsmith
Flint, Michigan  MARK A. GOLDSMITH
United States District Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2013.

                                                s/Deborah J. Goltz
                                                DEBORAH J. GOLTZ
                                                Case Manager