UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH, III,

    Plaintiff,

-vs-

    No. 10-13898
    District Judge Mark A. Goldsmith
    Magistrate Judge R. Steven Whalen

LYNN M. DAVIDSON, ET AL.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Sam Smith III, a prison inmate in the custody of the Michigan Department of Corrections, has filed a *pro se* civil complaint raising federal civil rights claims, as well as state law claims. These claims arise out of the termination of his parental rights in the St. Clair County, Michigan Circuit Court. As Mr. Smith puts it at ¶ 14 of his complaint, "This case involves the intentional and grossly negligent acts and omissions of state officials, which prevented Plaintiff from asserting his parental rights."

    Before the Court is Defendant Misty Wojnarowicz's Motion to Dismiss [Doc. #55], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint against her be DISMISSED WITH PREJUDICE.

    **I.   FACTUAL BACKGROUND**[1]

    The facts as alleged in Mr. Smith's complaint are as follows. In early 2007, he and his then-fiancé, Christa Lyn Brinkmeier, conceived a child, who was born on October 6,

---

[1] This is the third Report and Recommendation I have filed in this case, hence the verbatim repetition of certain general facts and allegations.

2007. However, both Mr. Smith and Ms. Brinkmeier were arrested in the Spring of 2007, and Mr. Smith was returned to prison as a parole violator. He remains incarcerated, but Ms. Brinkmeier was released from jail in September of 2007. Mr. Smith states that "[u]pon her release, Ms. Brinkmeier cut all ties to Plaintiff." Complaint, ¶ 19.

While in prison, Mr. Smith, wishing to "assert his parental rights and to contribute to his child's welfare," sought information as to the whereabouts of Ms. Brinkmeier and their child, Blake Anthony Brinkmeier. He subsequently learned that Defendant Misty Wojnarowicz, an employee of the State Department of Human Services ("DHS") had instituted a neglect and abuse petition in the St. Clair County Circuit Court, before Judge Elwood L. Brown.

The gist of the complaint is that despite numerous inquiries to the Circuit Court and to other Defendants, and despite his statements to State officials that he wished to assert his parental rights, Mr. Smith was not given notice of the parental termination proceedings, was not permitted to participate, and in fact was given erroneous information that impeded his ability to intervene in the State court proceedings. Plaintiff alleges that on March 16, 2008, he wrote to the Macomb County Friend of the Court seeking information about Blake Anthony Brinkmeier. Defendant Davidson, who was the Macomb County Friend of the Court, responded by letter dated March 24, 2008, stating that "the Macomb County Friend of the Court does not have your case at this time. However a support referral on behalf of your child has been initiated by the Michigan Office of Child Support. I am forwarding your correspondence to the attention of Support Specialist Deborah Ellis." Complaint, ¶¶ 27–28.

Plaintiff alleges that on June 11, 2008, he wrote to the Central Paternity Registry of the Michigan Department of Community Health, requesting a copy of his child's birth

certificate. He states that Defendant Williams, a legal affairs liaison with the Department of Human Services ("DHS"), replied, in a letter dated September 7, 2008, that Plaintiff's parental rights had been terminated on July 16, 2008. However, Plaintiff alleges that his rights were not terminated until September 25, 2008, when Judge Elwood Brown entered a termination order. *Id.* ¶¶ 37–41.

Plaintiff sues Defendant Wojnarowicz in both her official and personal capacities. *Id.* ¶ 5. The allegations against her are as follows. On October 31, 2008, following unsuccessful attempts to find out information from other Defendants, Plaintiff first learned of the St. Clair County parental termination case from a friend who had found the docket entries online. *Id.* ¶ 45. In November of 2008, he wrote a letter to Wojnarowicz, as well as Judge Brown, "explaining in detail his efforts to find out about his son and to assert his parental rights and asking for help in doing so." *Id.* ¶ 47. He received no response. *Id.* ¶ 48.

Plaintiff alleges that on May 5, 2009, he sent a petition to establish paternity to the St. Clair County Circuit Court. On May 8, 2009, Defendant Dunn, the Clerk of the Court, wrote him a letter stating, "I have been instructed by Judge Brown to return your pleadings to you since all parental rights have been terminated, therefore, you will not be able to establish paternity." *Id.* ¶¶ 54-55.

Plaintiff brings claims against Defendant Wojnarowicz for interference with his fundamental parental relationship "by refusing to tell him about the pending Blake Brinkmeier case and by refusing to tell the court that Plaintiff was trying to assert his parental rights in that case," in violation of the First Amendment (Count I), ¶ 65; and state law claims of gross negligence (Counts III and IV) and intentional infliction of emotional distress (IIED) (Count VI), ¶¶ 68-75, 80-82.

Plaintiff seeks $10 million in compensatory damages, a declaratory judgment that the Defendants violated his rights, and injunctive relief "requiring defendants to take appropriate actions consistent with a finding that they violated Plaintiff's rights." *Id.,* p. 12.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001).

The United States Supreme Court has altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." Id., 127 S.Ct. at 1964–65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (Internal citations and quotation marks omitted). See also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502

F.3d 545, 548 (6th Cir.2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of Twombley.FN3 First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown[n]'—'that the pleader is entitled to relief.' " 129 S.Ct. at 1950 (Internal citations omitted).

### III. DISCUSSION
#### A. Official Capacity Claims / Eleventh Amendment

Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.2005). Thus, Wojnarowicz in her official capacity is immune from Plaintiff's claim for monetary damages.

It is true that "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v.*

*Rising*, 427 F.3d at 358–359. However, this exception to Eleventh Amendment immunity applies to claims for prospective injunctive relief, not to remedies for past violations of federal law. *Mumford v. Basinski,* 105 F.3d 264, 270 (6th Cir. 1997)("However, cases against a state officer in which a claim for retrospective relief for *past* violation(s) of federal law is joined, such as the action at issue, are not exempted from the Eleventh Amendment's jurisdictional bar.") (citing *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985))(emphasis in original).

All claims against Defendant Wojnarowicz in her official capacity must therefore be dismissed.

## B.   Absolute Immunity

In my Report and Recommendation of July 7, 2011, I recommended that Wojnarowicz be *sua sponte* dismissed on the basis of quasi-judicial immunity. That recommendation was rejected, pending full briefing on the issue. To the extent that the claims against Wojnarowicz are based solely on her having instituted a child protection case, she was performing a public and adversarial function that would be correctable on appeal. As such, she would be entitled to absolute quasi-judicial immunity. *Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). However, as Plaintiff points out in his response [Doc. #57], at p. 5, "The actions for which Wojnarowicz is being sued is her failure to notify the St. Clair Circuit Court that Plaintiff had made contact and was seeking to assert his parental rights and her withholding of information that would have enabled Plaintiff to assert his rights in court before they were severed."

Plaintiff is correct that his complaint alleges, in Counts I and IV, that eight Defendants, including Wojnarowicz, failed in their duty "to inform the St. Clair Circuit Court that Plaintiff was attempting to assert his parental rights in the pending Blake

Brinkmeier case, once they became aware, from Plaintiff's letters or otherwise, that Plaintiff could have been the father of Blake Brinkmeier...."[2] In *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000)(en banc), a social worker who had initiated child protective proceedings was contacted by the children's mother. At the time the proceedings were commenced, the mother's whereabouts were unknown. Upon being contacted, the social worker falsely told the mother that the Department of Human Services had been awarded custody. The social worker also failed to inform the court that the mother had been located and was seeking custody of her children. Under these circumstances, the Sixth Circuit held that the social worker was not entitled to absolute immunity, because she was not acting in a prosecutorial, judicial, or advocacy function:

> "Once again, absolute immunity extends to social workers only when they are acting in the capacity of *legal advocates.* It is apparent that Ohio law does not envision a caseworker's principal function as that of an advocate, although at a certain stage in custody proceedings a caseworker might be called by the prosecutor to present reports or make recommendations that, functionally, constitute advocacy. But the acts for which Brush is being sued-failing to notify the trial court that Plaintiff had made contact and wished to assert her parental rights, telling Plaintiff that her rights had been severed when they had not yet been, and withholding information that would have enabled Plaintiff to raise her rights in court before her rights were severed-do not come within that description." *Id*. at 776 (emphasis in original).

Underr *Holloway*, and based on Plaintiff's allegation that Wojnarowicz was aware that he was seeking to assert his parental rights, but failed to inform the court of that fact, she is not entitled to absolute immunity.

### C. Qualified Immunity

Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a

---

[2] Plaintiff also alleges that these Defendants failed to inform *him* of the pending case.

-7-

constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

Plaintiff's claim against Defendant Wojnarowicz is based on the theory that she failed to inform the state court that he, as the father, was attempting to assert his parental rights in the termination proceedings that she initiated. As a result, Plaintiff claims infringement on his fundamental right of familial association, as a parent, in violation of the First Amendment. Even construing the facts in the light most favorable to the Plaintiff, and assuming that Wojnarowicz was aware that Plaintiff was attempting to assert his parental rights, she is entitled to qualified immunity under the Sixth Circuit's decision in *Pittman v. Cuyahoga County Dept. of Children and Family Services*, 640 F.3d 716 (6th Cir. 2011).

In *Pittman*, the Court assumed that under the Due Process Clause, the plaintiff had "a fundamental liberty interest in maintaining his parent-child relationship...." *Id*. at 727.[3] The plaintiff in *Pittman* alleged that a social worker made false representations to the court in a parental termination case, and interfered with his right to participate in those

---

[3] For purposes of the qualified immunity analysis under *Pittman*, it does not matter whether the claimed right is grounded in the Due Process Clause or the First Amendment.

-8-

proceedings. Finding that the social worker was entitled to qualified immunity, the Sixth Circuit held:

> "Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive Pittman of his fundamental right. Therefore, Hurry's conduct did not violate Pittman's substantive due process rights, and she has qualified immunity against that claim." *Id*. at 729.

*Lebeau v. Michigan Dept. of Human Services,* 2011 WL 4962386 (E.D.Mich.2011)(Duggan, J.), involved child removal proceedings in which the evidence showed that social workers were privy to the plaintiff-father's contact information, but decided not to contact him. DHS investigators indicated that they had made no effort to verify the mother's allegations of abuse. *Id*. at *3. Citing *Pittman*, the Court found that the social workers were protected by qualified immunity. "Since the May 2011 *Pittman* decision, multiple district courts in this Circuit have applied *Pittman* to reject similar claims." *Kolley v. Adult Protective Services*, 2012 WL 5819475, *7 (E.D. Mich. 2012)(Goldsmith, J.)(citing cases).

On the basis of *Pittman*, Defendant Wojnarowicz did not violate Plaintiff's constitutional rights, and is therefore entitled to dismissal on the basis of qualified immunity.[4]

### IV. CONCLUSION

For these reasons, I recommend that Defendant Misty Wojnarowicz's Motion to Dismiss [Doc. #55] be GRANTED on the basis of qualified immunity, and that the

---

[4] Wojnarowicz is also entitled to qualified immunity, as to state law claims against, her, under Michigan law. *See Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008); M.C.L. § 691.1407. Given that there was no violation of Plaintiff's fundamental rights by Wojnarowicz, she does not come within the "gross negligence" exception to Michigan governmental immunity.

complaint against her be DISMISSED WITH PREJUDICE.[5]

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

---

[5] Given my recommended disposition, it is not necessary to discuss Defendant's argument that dismissal would be required under the Rooker-Feldman doctrine. "The Rooker–Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). I note, however, that Rooker-Feldman would not apply to this case, since Plaintiff is seeking money damages for an independent constitutional claim, as opposed to a *de facto* appeal of a state court judgment. *See Holloway, supra*, 220 F.3d at 779.("[T]he question before us is rather whether certain actions in the course of those [parental termination] proceedings may have involved a violation of her federal constitutional rights for which the responsible party may be held liable for damages. The conceptual distinction [between that claim and the state termination proceedings] could not be more clear."). *See also Lebeau, supra.*

objections.

Dated: January 29, 2014          S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 29, 2014, electronically and/or by U.S. mail.

         s/Michael Williams
Case Manager for the
Honorable R. Steven Whalen

-11-