UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH, III,

        Plaintiff,

                                  No. 10-13898

-vs-                             District Judge Mark A. Goldsmith
                                  Magistrate Judge R. Steven Whalen

LYNN M. DAVIDSON, ET AL.,

        Defendants.

_____ /

**REPORT AND RECOMMENDATION**

Plaintiff Sam Smith III, a prison inmate in the custody of the Michigan Department of Corrections, has filed a *pro se* civil complaint raising federal civil rights claims, as well as state law claims. These claims arise out of the termination of his parental rights in the St. Clair County, Michigan Circuit Court. As Mr. Smith puts it at ¶ 14 of his complaint, "This case involves the intentional and grossly negligent acts and omissions of state officials, which prevented Plaintiff from asserting his parental rights."

Before the Court is a motion to dismiss [Doc. #50] filed by Defendants Michael Wendling and Edward Messing, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to these Defendants.

## I.   FACTS[1]

The facts as alleged in Mr. Smith's complaint are as follows. In early 2007, he and his then-fiancé, Christa Lyn Brinkmeier, conceived a child, who was born on October 6,

_____

[1] This is the fourth Report and Recommendation I have filed in this case, hence the verbatim repetition of certain general facts and allegations.

2007. However, both Mr. Smith and Ms. Brinkmeier were arrested in the Spring of 2007, and Mr. Smith was returned to prison as a parole violator. He remains incarcerated, but Ms. Brinkmeier was released from jail in September of 2007. Mr. Smith states that "[u]pon her release, Ms. Brinkmeier cut all ties to Plaintiff." Complaint, ¶ 19.

While in prison, Mr. Smith, wishing to "assert his parental rights and to contribute to his child's welfare," sought information as to the whereabouts of Ms. Brinkmeier and their child, Blake Anthony Brinkmeier. He subsequently learned that Defendant Misty Wojnarowicz, an employee of the State Department of Human Services ("DHS") had instituted a neglect and abuse petition in the St. Clair County Circuit Court, before Judge Elwood L. Brown.

The gist of the complaint is that despite numerous inquiries to the Circuit Court and to other Defendants, and despite his statements to State officials that he wished to assert his parental rights, Mr. Smith was not given notice of the parental termination proceedings, was not permitted to participate, and in fact was given erroneous information that impeded his ability to intervene in the State court proceedings. Plaintiff alleges that on March 16, 2008, he wrote to the Macomb County Friend of the Court seeking information about Blake Anthony Brinkmeier. Defendant Davidson, who was the Macomb County Friend of the Court, responded by letter dated March 24, 2008, stating that "the Macomb County Friend of the Court does not have your case at this time. However a support referral on behalf of your child has been initiated by the Michigan Office of Child Support. I am forwarding your correspondence to the attention of Support Specialist Deborah Ellis." Complaint, ¶¶ 27–28.

Plaintiff sues Wendling and Messing in both their official and individual capacities.  Defendant Wendling was the elected prosecuting attorney of St. Clair County.

Plaintiff alleges that Defendant Davidson, the Macomb County Friend of the Court, "sent a copy of her letter to the St. Clair Prosecuting Attorney's Office," *Id*. ¶ 30, and that neither Defendant Ellis "nor the St. Clair County Prosecuting Attorney's Office contacted Plaintiff or informed the St. Clair Circuit Court or DHS of Plaintiff's attempts to assert his parental rights." *Id*. ¶ 31. Plaintiff makes no other factual claims regarding Defendant Wendling.

Defendant Messing was a Staff Attorney for the St. Clair County Friend of the Court. *Id*. ¶ 34. Plaintiff alleges that on April 8, 2008, he wrote a letter to the St. Clair County Circuit Court asking for "assistance in locating his child, establishing paternity and custody, and in paying child support." He provided Lyn Brinkmeier's name as the mother, but does not indicate that he provided the name of the child. On April 24, 2008, Defendant Messing responded to the letter, stating that he was sending Plaintiff a "Child Support Services Application form," and that if Plaintiff returned it to him, Messing would forward it to DHS. *Id*. ¶¶ 33-34. Plaintiff returned the form to Messing, with a letter "explaining that the form was incomplete because Plaintiff lacked any information about the child other than its approximate date of birth and mother's name, which he provided." *Id*. ¶ 35. Wendling apparently forwarded the letter to DHS, because on May 19, 2008, "DHS denied the application because of the missing information...." *Id*. ¶ 36.

On September 25, 2008, Judge Brown entered an order terminating parental rights.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for

summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir.2001).

The United States Supreme Court has altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." Id., 127 S.Ct. at 1964–65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (Internal citations and quotation marks omitted). See also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of Twombley.FN3 First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

"Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown[n]'—'that the pleader is entitled to relief.' " 129 S.Ct. at 1950 (Internal citations omitted).

## III.    DISCUSSION

### A.    Official Capacity Claims / Eleventh Amendment

Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).  Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.2005). Thus, both Wendling and Messing in their official capacities are immune from Plaintiff's claim for monetary damages.

It is true that "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising*, 427 F.3d at 358–359. However, this exception to Eleventh Amendment immunity applies to claims for prospective injunctive relief, not to remedies for past violations of federal law. *Mumford v. Basinski,* 105 F.3d 264, 270 (6th Cir. 1997)("However, cases against a state officer in which a claim for retrospective relief for *past* violation(s) of federal law is joined, such as the action at issue, are not exempted from the Eleventh Amendment's jurisdictional bar.") (citing *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985))(emphasis in original).

All claims against these Defendants in their official capacities must therefore be dismissed.

## B.    Defendant Wendling

In his motion, Defendant Wendling acknowledges that during the time in question, the St. Clair County Prosecutor's Office acted as counsel for the DHS in the prosecution of child abuse and/or neglect cases. *Defendants' Brief*, p. 4.  However, Plaintiff has not alleged that Wendling, the chief, elected prosecutor, was personally involved in the Brinkmeier case.  Moreover, while the complaint alleges that Defendant Davidson sent a copy of Plaintiff's letter to the St. Clair County Prosecutor's Office, it does not allege that Wendling himself received or was aware of the letter.

The plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.  1984). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right." *Broder v. Corr. Med. Servs., Inc.,* 2008 WL 704229, at *7 (E.D.Mich. Mar.14, 2008) (emphasis added, quoting *Diebitz v. Arreola,* 834 F.Supp. 298, 304 (E.D.Wis.1993)).  *See also Rizzo v. Goode,* 423 U.S. 362, 372–73 (1976) (liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (at a minimum, a §1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate). This complaint lacks any plausible allegation that Wendling was personally involved in or was even aware of any wrongdoing. Thus, even if an assistant prosecutor assigned to the case had infringed upon Plaintiff's constitutional rights, that violation could not be imputed to Wendling on a *respondeat superior* theory.

Moreover, even if Wendling had been aware of Plaintiff's letter and its import, and

had personally decided to not inform the Court, he would nevertheless be entitled to dismissal on the basis of qualified immunity based on the Sixth Circuit's decision in Sixth Circuit's decision in *Pittman v. Cuyahoga County Dept. of Children and Family Services*, 640 F.3d 716 (6th Cir. 2011). In *Pittman*, the Court assumed that under the Due Process Clause, the plaintiff had "a fundamental liberty interest in maintaining his parent-child relationship...." *Id*. at 727.[2] The plaintiff in *Pittman* alleged that a social worker made false representations to the court in a parental termination case, and interfered with his right to participate in those proceedings. Finding that the social worker was entitled to qualified immunity, the Sixth Circuit held:

> "Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive Pittman of his fundamental right. Therefore, Hurry's conduct did not violate Pittman's substantive due process rights, and she has qualified immunity against that claim." *Id*. at 729.

*Lebeau v. Michigan Dept. of Human Services,* 2011 WL 4962386

(E.D.Mich.2011)(Duggan, J.), involved child removal proceedings in which the evidence showed that social workers were privy to the plaintiff-father's contact information, but decided not to contact him. DHS investigators indicated that they had made no effort to verify the mother's allegations of abuse. *Id*. at *3. Citing *Pittman*, the Court found that the social workers were protected by qualified immunity. *See also Kolley v. Adult Protective Services*, 2012 WL 5819475, *7 (E.D. Mich. 2012)(Goldsmith, J.)(citing cases)("Since the May 2011 *Pittman* decision, multiple district courts in this Circuit have applied *Pittman* to reject similar claims.").

The *Pittman* analysis applies with no less force to prosecuting attorneys.

---

[2] For purposes of the qualified immunity analysis under *Pittman*, it does not matter whether the claimed right is grounded in the Due Process Clause or the First Amendment.

## C.   Defendant Messing

Defendant Messing was a Staff Attorney with the St. Clair County Friend of the Court.  He correctly points out that under Michigan law, the Friend of the Court does not play a role in prosecuting abuse and neglect petitions.  The duties of the Friend of the Court are delineated in M.C.L § 552.505.  Each of the duties relates to the Friend of the Court's responsibilities to parties to domestic relation matters pending in the individual Circuit Court, and its responsibilities to the Circuit Court itself. M.C.L. § 552.502(m) defines "domestic relations matter" as "a circuit court proceeding as to child custody, parenting time, child support, or spousal support, that arises out of litigation under a statute of this state." This definition does not include parental termination cases.  Moreover, Michigan's statutory scheme regarding termination of parental rights, M.C.L. § 712A.19, et seq. , does not provide for Friend of the Court participation.

In a previous Report and Recommendation [Doc. #37], I relied on this same law in recommending the dismissal of Macomb County Friend of the Court Lynn Davidson. In accepting my Report and Recommendation and granting the motion to dismiss, the Court held that Davidson owed no statutory duty to the Plaintiff.  *Opinion* [Doc. #43], p. 4.  For the same reason, Defendant Messing, as a Friend of the Court employee, had no duty to Plaintiff to inform the Circuit Court of anything, or to take any action other than what he did: forward Plaintiff's request to DHS.

Finally, Messing would in any event be entitled to qualified immunity under *Pittman*, as discussed above.

In closing, I am not unsympathetic to Mr. Smith's plight, and I respect his efforts to, from the beginning, establish paternity and assume his responsibilities as a father, as best he can under the circumstances. However, while this Court cannot fashion the relief he seeks, he is not without remedy in the Michigan courts. As I indicated in a previous

Report and Recommendation, if he wishes to challenge an order or judgment terminating his parental rights, on the ground that he was not properly notified of the action, he arguably has recourse under M.C.R. 2.612(C)(3), which provides:

> "(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court."

## IV.   CONCLUSION

For these reasons, I recommend that Defendants Wendling's and Messing's motion to dismiss [Doc. #50] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to these Defendants.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the

objections.


Dated: January 30, 2014                          s/R. Steven Whalen
                                                 R. STEVEN WHALEN
                                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on
January 30, 2014, electronically and/or by U.S. Mail.

                                                 s/Michael Williams
                                                 Case Manager for the
                                                 Honorable R. Steven Whalen